**VOLKSWAGEN OF AMERICA, INC.**
v.
**UNITED STATES.**

C.D. 4172; Protest Nos. 68/61837–656, 68/61840–659, and 68/61841–660.

United States Customs Court, Third Division.
Feb. 2, 1971.

Donohue & Shaw, New York City (Aloysius P. Stedina and Joseph F. Donohue, New York City, of counsel) for plaintiff.

1. This item number was originally designated as 692.05, but was changed by

L. Patrick Gray, III, Asst. Atty. Gen. (John A. Winters, New York City, trial attorney), for defendant.

Before RICHARDSON and LANDIS, Judges.

RICHARDSON, Judge:

The merchandise of these protests, identified on the invoices as "VW–CAR" or "VW–CARS", model 265, which were exported from West Germany and entered at the port of Houston, Texas, were classified in liquidation under item 945.-69 of the Tariff Schedules of the United States as automobile trucks valued at $1,000 or more at the duty rate of 25 per centum ad valorem. It is claimed in the protests, among other things, that said merchandise is properly classifiable as motor vehicles other than automobile trucks under item 692.10 of the Tariff Schedules, which classification currently calls for payment of duty at the rate of 5½ per centum ad valorem. An alternative protest claim for classification of the involved merchandise under item 692.05 of the Tariff Schedules as automobile trucks valued at $1,000 or more at the duty rate of 8.5 per centum ad valorem was abandoned by plaintiff at the trial.

Thus, the competing tariff provisions before the court read as follows:

[Classified]
APPENDIX TO THE TARIFF SCHEDULES, PART 2, Subpart B.—Temporary Modifications Pursuant to Section 252 of the Trade Expansion Act of 1962
\* \* \* \* \* \*
945.69 Automobile trucks valued at $1,000 or more (provided for in item 692.02 [1]) ....25% ad val.
[Claimed]
TSUS Schedule SIX, PART 6, Subpart B, Motor Vehicles
\* \* \* \* \* \*
Motor vehicles (except motorcycles) for the transport of persons or articles:
Automobile trucks valued at $1,000 or more, and motor buses:
[692.02]      Automobile trucks .. \* \* \*
\*      \*      \*      \*      \*      \*
692.10      Other ............6.5% ad val.

Presidential Proclamation 3822, effective Jan. 1, 1968.

The principal issue before the court is whether the instant motor vehicles are automobile trucks within the meaning of item 692.02 of the Tariff Schedules. The evidence adduced by the plaintiff-importer upon the trial clearly establishes that the model 265 Volkswagen is constructed in such a manner that it combines the physical attributes and features of both a passenger vehicle and a pickup truck on a single chassis. The forward portion of the vehicle from mid-chassis forward and extending over the front axle is an enclosed cab featuring windows including partial width rear window, three doors (one left side, two right side), and two bench type seats to accommodate a driver and five passengers seated three up front and three to the rear. The rear portion of the vehicle from mid-chassis backward and extending over the rear axle is a pick-up type truck body the sides of which extend up to the lower level of the rear window, thus affording a partial view of the rear from inside the cab. The vehicle has an overall payload capacity of approximately 2200 pounds which is allocable to both passengers and cargo. And options include a fitted tarpaulin for the pickup body and a capability of removing the rear bench seat inside the cab for non-passenger use of that space. The model 265 Volkswagen, called a double-cab pickup, is promoted by the manufacturer, Volkswagenwerke, AG., of Wolfsburg, Germany, as a truck along with a number of its other type 2 vehicles built on the same chassis as its model 265. But the model 265 has been consistently entered for tariff purposes by the plaintiff-importer as a motor vehicle other than an automobile truck under item 692.10 of the Tariff Schedules; and, with some few exceptions the vehicle has been classified by customs under item 692.10.

On the subject of uses to which the model 265 Volkswagen is put, the testimony of Fritz Mueller, plaintiff's technical marketing coordinator, is pertinent. Mr. Mueller, prior to moving into this present position, had at various times and places in the United States between 1956 and 1968 been employed by plaintiff as technical field engineer and technical engineer; and prior to 1956 was employed in Germany by Volkswagenwerke where he also received training in technical organizational matters and instruction of personnel, studied product facilities and design, and witnessed the assembly of Volkswagen vehicles, types 1 and 2. With respect to uses of the model 265 vehicle Mr. Mueller testified on direct examination (R. 26–27):

BY MR. STEDINA:

Q Would you know, Mr. Mueller, some examples of what this vehicle does? A The vehicles are used quite often for survey crews, where they do have personnel of 5 or 6 going to—

\* \* \* \* \* \*

Q Go on. A In addition, gardening crews, which do have to go out for landscaping in residential areas, where they do require 4 or 5 persons, plus in addition, plants and trees; or even road crews, where a number of 4 or 5 or even more, have to be carried up to working area, plus a small amount of equipment.

And, again on cross-examination on the same subject, the witness testified (R. 49):

Q You stated that the vehicle can be used for small crews, and something about gardening crews, people going out gardening. A Landscaping activities.

Q Is your testimony based on VW's advertising program, where they want these things to be marketed, or do you actually know that small crews use this or landscapers? A I have seen it. It is not only based on advertising, because I have been too long in the service end. Therefore, the year where I have been in advertising now did not influence it to such an extent.

It was also brought out during the cross-examination of Mr. Mueller that the model 265 Volkswagen was developed as a combination type vehicle, so that, in the words of the witness, "you would be

able to do both, carry passengers and carry cargo." (R. 46).

Evidence adduced by the defendant establishes that domestic vehicle manufacturers Ford and Dodge produce a vehicle similar to the model 265 Volkswagen which is called a "crew cab" pickup, Ford promotes its vehicle as a truck; and one of its sales engineers who handles Ford's crew cab pickup testified that he considered the model 265 Volkswagen to be a truck, although he confined his definition of a truck to a vehicle designed for the principal or more important function of transporting cargo (R. 96). And an attorney employed by the New York State Department of Motor Vehicles testified that in his opinion the model 265 Volkswagen came within the definition of an "automobile truck", which definition he stated to be a "motor vehicle propelled other than by muscular power, specially built, designed or equipped to carry goods, wares, or merchandise", and that for registration purposes in New York State the model 265 Volkswagen would be classified as a commercial vehicle, sub-classification, light delivery truck. (R. 106, 110). And a foreman auto mechanic in the employ of the New York City Department of Highways testified that his understanding of the term "automobile truck" is a "motor vehicle to transport cargo". (R. 122).

The foregoing constitutes the salient evidence bearing on the classification issue before the court. Plaintiff contends that the model 265 Volkswagen is not an "automobile truck" because it is designed to and does perform the dual job of carrying cargo and passengers with equanimity. Defendant argues that this vehicle is an "automobile truck" because it is primarily designed to carry cargo.

It will be noted that the superior heading common to the disputed tariff provisions here involved, namely, items 692.-02 and 692.10, is definitive (and, as such, delimiting) of the nature and type of motor vehicles which can properly find classification thereunder. The language "Motor vehicles (except motorcycles) for the transport of persons or articles:" of this heading plainly contemplates motor vehicles which are *single purpose* transport vehicles, i. e., motor vehicles which transport either persons *or* articles. Thus, it follows that the two inferior headings (one specific and the other residual) indented thereunder, namely, "Automobile trucks valued at $1,000 or more, and motor buses" and "Other", embrace motor vehicles which are single purpose transport vehicles, in keeping with the limitation of the superior heading.

The most notable example of this concept is to be found in connection with the tariff treatment given to automobile trucks by the Tariff Commission in its preparation of the Tariff Schedules. Parenthetically, we observe here that the definitions of the words "truck" and "automobile truck" of the intervening years which are supplied in the brief filed by the plaintiff [defendant furnished no definitions] uniformly convey to the mind the motion that an automobile truck is a vehicle for transporting articles; and none of these definitions suggest or imply that an automobile truck is a vehicle for carrying persons not connected with the incidence of vehicular operation inclusive of lading and unlading of cargo. Hence, against the available background of definition the Commission initially proposed under the aforementioned superior heading as item 692.05 a provision for "automobile trucks" without limitation. But before the Tariff Schedules as proposed became effective the Commission amended the proposed item 692.05 by inserting a value limit on the automobile trucks embraced by item 692.-05, viz. valued at $1,000 or more. And in making this particular amendment the Commission indicated that the then increasing importations of compact automobile trucks valued under $1,000 would be dutiable at the lower rate of duty of

8.5 per centum ad valorem which was the residual provision under item 692.10.[2] Thus, it is seen that the intent of the Commission prior to adoption of the Tariff Schedules was to provide *specifically* for single purpose transport vehicles under item 692.05 in the form of automobile trucks valued at $1,000 or more and motor buses; and also to provide *residually* for single purpose transport vehicles under item 692.10 in the form of automobile trucks valued under $1,000, and, of courses, as the Tariff Classification Study reveals, passenger automobiles, as a carryover from paragraph 369(b) of the 1930 Tariff Act.

The evidence presented in this case by the plaintiff, particularly the testimony of the witness Fritz Mueller, clearly shows that the model 265 Volkswagen is not a *single* purpose transport vehicle, but is, on the contrary, a *dual* purpose transport vehicle. Under such evidence it would be just as illogical to classify the model 265 as an automobile truck as it would be to classify it as a passenger automobile. In our opinion, it is neither a truck nor a passenger automobile, and as such, cannot properly be classified under any provision of the superior heading for single purpose transport vehicles, whether specific or residual. As such, neither the classification herein nor the claim advanced herein for classification of this particlular vehicle is correct and proper, and we so hold.

We find from the evidence presented in this record that the model 265 Volkswagen is specially suited to perform the limited role of conveying a small crew and its equipment to and from a particular place or job site, and is specially constructed and equipped to perform special services. Therefore, we are constrained to overrule the protests, without, however, affirming the classification rendered herein by the district director.

Judgment will be entered accordingly.

LANDIS, J., concurs.

2. See Tariff Classification Study, Vol. 2, page 516, Vol. 8, page 320, and Vol. 12, page 67, Reference No. 54—First Suppl. Rept.